OPINION OF THE COURT
George M. Bergerman, J.
This is a motion by the defendant for summary judgment *132 dismissing plaintiffs complaint. The plaintiff opposes the defendant’s motion but agrees that only an issue of law is presented and contends that summary judgment should be granted in favor of the plaintiff.
Plaintiff is the owner of two lots in Highgate Estates, a subdivision plat which was filed in the Rockland County Clerk’s office on May 28, 1968 following the granting of final subdivision approval by the Town of Haverstraw (the subject property is now located within the Village of Pomona). The Highgate Estates area is mountainous, with slopes of varying steepness.
In January 1998, the Village of Pomona adopted Local Law 1-98 entitled “A Local Law Providing for Procedures and Standards for Site Plan Review for Residential Construction” and added a new chapter to the Pomona Code, chapter 119, which constitute the subject matter of this action, hereinafter referred to as the “steep slope” law.
The purpose of this enactment was to expand the authority of the Village Planning Board to protect the environmental aspects of “steep slopes.” The creation or disturbance of a “steep slope” is prohibited without the prior issuance of a site development plan permit issued by the approving authority. Three categories of “steep slopes” are defined by Pomona Code § 119-1 as follows:
“(1) moderately steep slope — A slope equal to or greater than 15% but less than 25% and covering a minimum horizontal area or 3/10 of an acre or 13,068 square feet. .
“(2) very steep slope — A slope equal to or greater than 25% but less than 35%, and covering a minimum horizontal area of 2/10 of an acre or 8,712 square feet.
“(3) extremely steep slope — A slope equal to or greater than 35% and covering a minimum horizontal area of 1/10 of an acre or 4,356 square feet.”
Any application that involves a disturbance in an area of a “very steep slope” or an “extremely steep slope” must receive Planning Board approval for issuance of the site development plan permit. (Pomona Code § 119-4.) The approval process before the Planning Board entails additional fees, public notice, public hearings and the additional delay which is attendant to proceedings before any Planning Board. In the case of an application that involves a disturbance in an area of a “moderately steep slope” the Village Engineer is the approving authority for site development plan permit applications, without the involvement of the Planning Board.
*133 Chapter 119 is applicable to all property on which the creation or disturbance of a “steep slope” is proposed, without regard to whether the property is encompassed within a previously approved subdivision plat.
(The court notes that the subject enactments do not require site plan approval by the Planning Board for subdivision lots that do not come within the definition of “very steep/moderately steep” slope.)
The Mayor of the Village of Pomona has submitted an affidavit which provides the court with the following information regarding respondent’s intent in adopting the “steep slope” law. “The steep slope law is necessary for protection of property and structures in the Village of Pomona. The need for site plan review for lots in the area where the plaintiff’s lot is located is particularly acute by reason of the varying degrees of slopes, some of which are quite severe. The purpose of the review is to assure that the slopes remain stable and that homes and people are safe.”
Although the record is not clear, the plaintiff’s two lots apparently contain an “extremely steep slope” or a “very steep slope.” At oral argument, plaintiff did not contest that portion of the “steep slope” law which required approval of a site development plan by the Village Engineer, agreeing that plaintiff would submit an application for these lots to the Village Engineer. It is that portion of the “steep slope” law which requires proceedings before the Planning Board for extremely/ very steep slopes to which plaintiff objects. Plaintiff’s complaint alleges that the delegation of this authority to the Village Planning Board where prior subdivision approval has been granted is in excess of the authority granted by the State Legislature to villages.
To support this contention that the Planning Board has no delegated power to conduct site plan review where prior subdivision approval has been granted, the plaintiff relies upon the following language contained in Village Law § 7-725-a (1), the site plan review statute: “Plats showing lots, blocks or sites which are subject to review pursuant to authority provided for the review of subdivisions under section 7-728 [the subdivision approval statute] of this article shall continue to be subject to such review and shall not be subject to review as site plans under this section.”
In Riegert Apts. Corp. v Planning Bd. (57 NY2d 206, 211), the Court of Appeals in interpreting the provisions of Town Law § 274-a (site plans) and Town Law §§ 276 and 277 *134 ' (subdivision plats), which contain provisions equivalent to those statutes in issue in this action (Village Law § 7-725-a [site plans] and Village Law § 7-728 [subdivision plats]), discussed the differences between site plans and subdivision plats: “ ‘A site plan usually evidences the proposed development of a single lot, whether for one principal building and permitted accessory buildings, or for a group of buildings (such as a group residential development or an industrial park), intended to remain in one ownership. A subdivision plat contemplates division of one tract into a number of smaller lots with eventual separate ownership of each such lot.’ ”
More specifically, as to “site plans,” Village Law § 7-725-a (2) (a) authorizes the Village Board of Trustees to authorize the Planning Board to “review and approve, approve with modifications or disapprove site plans, prepared to specifications set forth in the local law and/or in regulations of such authorized board.” It also states that the “site plan elements which are included in the local law may include, where appropriate, those related to parking, means of access, screening, signs, landscaping, architectural features, location and dimensions of buildings, adjacent land uses and physical features meant to protect adjacent land uses as well as any additional elements specified by the village board of trustees in such local law.”
As to “subdivisions,” Village Law § 7-728 (4) (a) defines “subdivision” as “the division of any parcel of land into a number of lots, blocks or sites as specified in a law, rule or regulation, with or without streets or highways, for the purpose of sale, transfer of ownership, or development.”
In Moriarty v Planning Bd. (119 AD2d 188, lv denied 69 NY2d 603), the Second Department reviewed the provisions of Village Law § 7-725 (the predecessor to Village Law § 7-725-a) in determining the extent of the review powers possessed by the Planning Board in reviewing site plans. At the time Moriarty was decided, section 7-725, in addition to the specifically enumerated criteria for site plan review, permitted consideration of “such other elements as may reasonably be related to the health, safety and general welfare of the community.” (Village Law § 7-725 [1] [a].) Moriarty found that this additional “general welfare” criteria did not provide the Planning Board with the power to deny site plan approval “because of the lack of nearby public water for fire protection purposes, a factor unmentioned in the State enabling statute or the derivative sections of the * * * Zoning Ordinance” (supra, at 193). The Court determined that ejusdem generis was applic *135 able which required the Court to limit the general language of the statute by the specific phrases which preceded it. The words contained in the “general welfare” clause of the predecessor statute were “ ‘construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words’.” (Supra, at 197.)
In 1993, the Legislature effectively broadened the authority of the Village Board of Trustees by repealing section 7-725 (1) (а) , which contained the “general welfare” wording, and replacing it with Village Law § 7-725-a (2) (a), which permits the Board of Trustees to delegate to the Planning Board the authority to consider “any additional elements specified by the village board of trustees in such local law.” (See, Rice, Practice Commentaries, McKinney’s Cons Laws of NY, Book 63, Village Law § 7-725-a, at 49-50.) The court finds that consideration of “steep slope” criteria is encompassed within this broader delegation of authority. It further finds that even applying the rule of construction of ejusdem generis, consideration of the “steep slope” criteria is embraced by the preceding words contained in section 7-725-a (2) (a), more particularly “landscaping, architectural features, location and dimensions of buildings, adjacent land uses and physical features meant to protect adjacent land uses.” Most importantly, three of these criteria are particularly relevant to the “steep slope” ordinance (adjacent landscaping, land uses and physical features meant to protect adjacent land uses) as they are directly related to the possible impact that disturbance of very/extremely steep slopes could have on water runoff and the stable, cohesive integrity of the soil, rocks, trees and vegetation on such slopes. Accordingly, the court finds that the enactment of the “steep slope” law by the Village of Pomona is well within the New York State Legislature’s delegation of authority to the Board of Trustees of the Village of Pomona to delegate its authority, pursuant to section 7-725-a (2), to the Village Planning Board.
Plaintiff contends that the last sentence of Village Law § 7-725-a (1) prohibits site plan review where prior subdivision approval has been granted. The court’s task in reviewing the relevant statutory provisions, Village Law § 7-725-a (1), (2) and (б) , “is to construe the * * * statutes, as written, according to the ordinary meaning of their language, seeking to harmonize the whole and to avoid rendering any part surplusage.” (Riegert Apts. Corp. v Planning Bd., supra, at 209 [citations omitted].)
In Riegert (supra), the Court of Appeals held that there was no statutory delegation of power to the Town Board to permit *136 the Planning Board to require that land or money-in-lieu-of land be delivered for the development of municipal parks as a condition for site plan approval.
In reviewing the previously existing statutory provisions in the Riegert case (supra), the Court of Appeals was concerned that to permit land or money-in-lieu-of land as a condition for. site plan approval would enable a Town “to exact a toll twice from the same development: once when the developer seeks approval of the plat; the second time when individual lot owners seek approval of the building plans for their homes.” (Riegert Apts. Corp. v Planning Bd., at 212.)
In response to the Riegert decision (supra), the Legislature amended Village Law § 7-725-a by specifically authorizing a Planning Board to consider land or money-in-lieu-of land as a condition for site plan approval. (Village Law § 7-725-a [6].) To prevent the “double dipping” referred to in Riegert, section 7-725-a (6) (d) was enacted which requires that an applicant for site plan approval receive credit for any land set aside or recreation fees paid if the land was previously the subject of such condition during the subdivision application approval.
Village Law § 7-725-a (6) (d) provides as follows: “(d) Notwithstanding the foregoing provisions of this subdivision, if the land included in a site plan under review is a portion of a subdivision plat which has been reviewed and approved, the authorized board shall credit the applicant for any land set aside or money donated in lieu thereof under such subdivision plat approval. In the event of resubdivision of such plat, nothing shall preclude the additional reservation of parkland or money donated in lieu thereof.”
This subdivision (6) provision necessarily presumes the power of the Planning Board to conduct both subdivision approval and site plan review for the same property. Accordingly, to “harmonize” these statutory provisions and to avoid rendering any provision as surplusage the court finds that the Planning Board has the power, when specifically delegated by the Village Board, to conduct both subdivision and site plan review.
If plaintiff was correct in concluding that site plan review was precluded where prior subdivision approval had been granted, subdivision (6) would conflict with the remainder of the statutory framework.
The court reads the language of the last sentence of section 7-725-a (1) as simply prohibiting the Planning Board from reviewing a subdivision application by applying the criteria of *137 section 7-725-a. The key words in this subdivision are “subject to review.” As long as plats (subdivisions) are “subject to review” they remain “subject to review” pursuant to the provisions of section 7-728 and not pursuant to the provisions of section 7-725-a (1).
Otherwise stated, the court interprets the subject language to mean that within the process of subdivision approval, individual lots cannot be subjected to site plan review.
The provisions of the “steep slope” law as they relate to very steep/extremely steep slopes do not require a review of the initial plat .(subdivision) but rather a site plan review by the Planning Board only as to individual lots which come within the very steep/extremely steep slope definition.
The court also notes that section 7-725-a contains no provision which specifically exempts lots in prior approved subdivisions from site plan review.
The court also observes that the Pomona ordinance provides only for mitigation of “steep slope” impacts and cannot serve as a basis for denial of an applicant’s right to build on the site.
The defendant’s motion for summary judgment is granted and plaintiffs complaint is hereby dismissed.